# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 08-3391

_____

Tim Tian, also known as     *
Tian Hongguo, also known     *
as Hongguo Tian,     *
    *
       Petitioner,     *
    *
    *    Petition for Review from the
      v.     *    Board of Immigration Appeals.
    *
Eric H. Holder, Jr.,[1] Attorney     *
General of the United States,     *
    *
       Respondent.     *

_____

Submitted: June 10, 2009
Filed: August 19, 2009

_____

Before MURPHY, ARNOLD and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Tim Tian, a native and citizen of the People's Republic of China, petitions for review of a decision of the Board of Immigration Appeals ("BIA") finding that he is

---

[1]Eric H. Holder, Jr., became the Attorney General on February 3, 2009, and is automatically substituted as respondent under Rule 43(c)(2) of the Federal Rules of Appellate Procedure.

removable as an aggravated felon and denying his application for asylum, withholding of removal, and protection under Article 3 of the Convention Against Torture ("CAT"). For the following reasons, we deny Tian's petition.

## I.  BACKGROUND

Tian first entered the United States in September 1996 to attend graduate school at the University of Minnesota. In January 2000, Tian began working for Parametric Technology Corporation as a software engineer at Parametric's offices in Arden Hills, Minnesota.

In September 2005, Tian informed Parametric that he needed to return to China to deal with a family emergency. There was no such emergency, and Tian did not return to China. Instead, Tian remained in Minnesota and began working for Medtronic Corporation. Over the next three months, Tian communicated with Parametric employees on several occasions by e-mail and telephone, claiming all the while that he was in China. In the meantime, Tian collected paychecks from Parametric, which had granted him a leave of absence, and from his new employer, Medtronic. In early November 2005, Parametric told Tian that if he did not return to work he would be fired on December 5, 2005. On December 6, Parametric notified Tian that his employment was terminated, effective immediately.

On December 9, 2005, at about 11:00 p.m., and again on December 10, at about 1:00 a.m., Tian entered Parametric's offices in Arden Hills using his employee security badge, which Parametric had not yet deactivated. Tian logged in to Parametric's computer network and downloaded the source code for a software product on which he had worked, called "QA Link." Tian then sent the source code for QA Link from his workstation at Parametric to two of his personal e-mail accounts. Tian also copied files containing the QA Link source code and other data

to a server that he could access from an off-site location. On December 11, Tian accessed the server and saved the relevant files to his personal computer.

Parametric reported Tian's unauthorized access to its computer network to law enforcement. Tian was eventually arrested and charged with one count of unauthorized access to a computer in violation of 18 U.S.C. § 1030(a)(4) and five counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 1346. Tian agreed to plead guilty to the charge of unauthorized access to a computer in exchange for the dismissal of the other charges. On December 20, 2006, the district court[2] sentenced Tian to 11 months' imprisonment and ordered him to pay $47,015 in restitution to Parametric and $96,099.38 in restitution to Medtronic. The amount of restitution that Tian was ordered to pay to Parametric included $29,800 that Parametric spent on an internal investigation to assess the damage caused by Tian's unauthorized access to its computer network.

On February 14, 2007, U.S. Immigration and Customs Enforcement took Tian into custody and issued a notice to appear before an immigration judge ("IJ") for removal proceedings. The notice to appear charged that Tian was removable because he had been convicted of an "aggravated felony," a term that is defined by statute to include "an offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." *See* 8 U.S.C. § 1101(a)(43)(M)(i). Tian contested the charge, arguing that although his crime involved fraud or deceit, it did not result in any loss to the victim. Tian also applied for asylum, withholding of removal, and protection under Article 3 of the CAT.

The administrative review in this case was unusually convoluted, requiring two remands to the IJ before the BIA finally dismissed all of Tian's claims. Initially, the

---

[2]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

IJ found that Tian was removable as an aggravated felon because the total loss to the victims, including the amount of restitution that Tian was ordered to pay to Parametric and Medtronic, exceeded $10,000. Based on this finding, the IJ held that Tian was statutorily ineligible for asylum. Next, the IJ found that Tian's conviction qualified as a "particularly serious crime," which made him statutorily ineligible for withholding of removal. Finally, the IJ denied Tian's application for deferral of removal under Article 3 of the CAT on the merits.

The BIA reversed the IJ's decision in part and remanded for further proceedings. In particular, the BIA indicated that removability under § 1101(a)(43)(M)(i) depends on "evidence [of] a connection between the loss suffered by the aggrieved party and the specific conduct that led to [the] alien's conviction." The BIA found that a remand was necessary because the IJ in calculating the amount of the loss "appears to have mistakenly relied on the restitution order," which by agreement included losses that were not tied to Tian's unauthorized access to a computer, "rather than relying on the charge to which [Tian] pleaded guilty."

On remand, the IJ again found that Tian was removable as an aggravated felon because the total loss to Parametric exceeded $10,000. This time, the IJ specifically noted that "at a minimum, the investigative costs incurred by [Parametric], in the amount of $29,800, are properly considered a loss to the victim[]." Accordingly, the IJ held that Tian was statutorily ineligible for asylum. Next, the IJ reconsidered its previous finding that Tian's conviction qualified as a particularly serious crime, concluding that the "economic offense" of unauthorized access to a computer did not meet the standard set out by the BIA in *In re N-A-M-*, 24 I. & N. Dec. 336 (B.I.A. 2007). On the merits, the IJ found that Tian met his burden of showing that it was "more likely than not" that he would face persecution in China on account of his religion and therefore granted Tian's application for withholding of removal. The IJ went on to deny Tian's application for protection under Article 3 of the CAT.

The BIA affirmed the IJ's finding that Tian was removable as an aggravated felon and the IJ's holding that Tian was statutorily ineligible for asylum. The BIA reasoned that because "the investigative costs alone, incurred by [Parametric], are more than $10,000, and these costs were incurred because of [Tian's] unauthorized computer use, . . . [Tian's] crime constitutes an aggravated felony." Turning to Tian's application for withholding of removal, the BIA suggested that the IJ misinterpreted its decision in *In re N-A-M-*. The BIA noted in this regard that *In re N-A-M-* did not overturn BIA precedent "holding that a crime involving property alone may be a particularly serious one." The BIA also noted that the IJ's most recent decision lacked a full analysis of the nature of Tian's conviction, the type of sentence imposed by the district court, the circumstances of the offense, and other relevant factors. As a result, the BIA again remanded the case for further proceedings concerning Tian's application for withholding of removal. The BIA went on to dismiss Tian's appeal insofar as it related to the denial of his application for protection under Article 3 of the CAT.

On remand, the IJ determined that "the elements of [Tian's] offense potentially bring it within the ambit of a particularly serious crime." The IJ then considered in detail "all reliable information" about the sentence imposed by the district court and the circumstances of Tian's offense. The IJ found that Tian's conviction qualified as a particularly serious crime and concluded that Tian was therefore statutorily ineligible for withholding of removal. Nevertheless, the IJ made a conditional finding that Tian failed to meet his burden of showing that it was "more likely than not" that he would face persecution in China on account of his religion or any other ground.

The BIA affirmed the IJ's finding that Tian's conviction qualified as a particularly serious crime. Because Tian was therefore statutorily ineligible for withholding of removal, the BIA dismissed Tian's appeal without addressing the merits of his claim that he would face persecution in China. The BIA summarily rejected Tian's arguments relating to issues that were raised and decided in his

previous appeals, including the denial of his application for protection under Article 3 of the CAT.

Tian's petition for review raises two principal issues: first, whether the IJ and the BIA erroneously determined that his conviction qualifies as an aggravated felony; and second, whether the IJ and the BIA failed to apply the correct legal standard in determining that his conviction qualifies as a particularly serious crime.[3]

## II. DISCUSSION

Our jurisdiction to consider Tian's petition for review is limited by 8 U.S.C. § 1252(a)(2)(C) and (D). Subparagraph (C) generally precludes judicial review in cases involving aliens who are removable as aggravated felons. *See id.* § 1252(a)(2)(C) (cross-referencing *id.* § 1227(a)(2)(A)(iii)); *Xiong v. Gonzales*, 484 F.3d 530, 534 (8th Cir. 2007). But subparagraph (D) provides that subparagraph (C) does not preclude judicial review "of constitutional claims or questions of law." *Id.* § 1252(a)(2)(D); *see Xiong*, 484 F.3d at 534. To the extent Tian raises questions of law about whether his conviction qualifies as an aggravated felony and a particularly serious crime, we have jurisdiction to consider both of the principal issues raised in his petition. *See Tostado v. Carlson*, 481 F.3d 1012, 1014 (8th Cir. 2007) (aggravated felony); *Solis v. Mukasey*, 515 F.3d 832, 835 (8th Cir. 2008) (particularly serious crime).

---

[3]Tian also argues that the BIA disregarded the transcript of his sentencing hearing, which he describes as "the most reliable source of information about [his] conviction." Tian does not convincingly explain why the transcript is more reliable than the plea agreement or the provisions of the presentence report to which Tian did not object. In any event, we conclude that the BIA considered all pertinent evidence in the record, including the transcript of Tian's sentencing hearing. Indeed, both the IJ and the BIA cited relevant portions of the transcript in support of their findings.

In dismissing Tian's administrative appeal, albeit in piecemeal fashion, the BIA adopted the IJ's reasoning in relevant part while adding reasoning of its own; thus, we will consider both decisions. *See Rafiyev v. Mukasey*, 536 F.3d 853, 856 (8th Cir. 2008). We review legal questions de novo, giving "substantial deference" to the BIA's interpretation of any ambiguous provisions in the immigration statutes and regulations that it administers. *See Zheng v. Mukasey*, 509 F.3d 869, 871 (8th Cir. 2007); *see also INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999).

Tian first argues that the IJ and the BIA erroneously determined that his conviction for unauthorized access to a computer in violation of 18 U.S.C. § 1030(a)(4) qualifies as an aggravated felony. Recall that "aggravated felony" is defined to include "an offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). From the outset, Tian has conceded that his offense involved fraud or deceit. The question, then, is whether Tian's offense is one in which the loss to the victim or victims exceeded $10,000.

The Supreme Court recently resolved a split in the circuits about "whether the $10,000 threshold in subparagraph (M)(i) refers to an element of a fraud statute or to the factual circumstances surrounding commission of the crime on a specific occasion." *Nijhawan v. Holder*, 557 U.S. ---, 129 S. Ct. 2294, 2298 (2009). The Court held that the statute "calls for a 'circumstance-specific,' not a 'categorical,' interpretation." *Id.* at 2300. Thus, the $10,000 threshold "applies to the specific circumstances surrounding an offender's commission of a fraud and deceit crime on a specific occasion." *Id.* at 2302.

The parties agree that the amount of the loss attributed to Tian must be tied to his unauthorized access to a computer—the only count of the indictment to which he pled guilty. *See id.* at 2303 ("[A]s the Government points out, the 'loss' must 'be tied to the specific counts covered by the conviction.'"). Tian contends that the IJ and the

BIA improperly calculated the amount of the loss by including losses that related to the dismissed wire fraud counts. In support, Tian asserts that the relevant sources of evidence—the plea agreement, the presentence report, and the restitution order—all included losses that were untethered to Tian's underlying conviction. We are not persuaded.

Both the IJ and the BIA expressly recognized that the amount of the loss attributed to Tian must be tied to his unauthorized access to a computer. In the second of the IJ's three opinions, the IJ described the dispositive question as "whether the loss to the victims of the offense for which the respondent was convicted . . . exceeds $10,000." Likewise, in the second of the BIA's three opinions, the BIA reiterated "that the loss[] must be attributable to the unauthorized use [of a computer], and not to . . . wire fraud, because [Tian] was not convicted of the [wire fraud] charge[s]." Both the IJ and the BIA made clear that their findings concerning the amount of the loss were premised on the investigative costs incurred by Parametric. The IJ specifically noted that "at a minimum, the investigative costs incurred by [Parametric], in the amount of $29,800, are properly considered a loss to the victim[]." And the BIA reasoned that because "the investigative costs alone, incurred by [Parametric], are more than $10,000, and these costs were incurred because of [Tian's] unauthorized computer use, . . . [Tian's] crime constitutes an aggravated felony."

At sentencing, Tian conceded through counsel that the investigative costs incurred by Parametric were directly related to his unauthorized access to a computer, the specific count covered by his conviction.[4] Tian has not disputed the total amount

---

[4]According to Tian's trial counsel,

[Parametric] . . . clearly suffered a loss and we have stipulated that they have suffered a loss. . . . [I]n essence, what you've got is he went in and burgled out the software and [Parametric] had to see what it was, what damages he caused. . . . [Parametric] spent a chunk of change figuring

of the investigative costs ($29,800) at any stage of the criminal or administrative proceedings. Because the investigative costs alone exceeded $10,000, the fact that the plea agreement, the presentence report, and the restitution order included other losses, such as the salary and benefits that Tian collected from Parametric during his leave of absence, is simply beside the point.

At oral argument, Tian insisted that the investigative costs incurred by Parametric were related, at least in part, to the dismissed counts of wire fraud rather than Tian's unauthorized access to a computer. This contradicts Tian's concession at sentencing that the investigative costs incurred by Parametric were directly related to the specific count of his conviction, and Tian has made no attempt to reconcile these seemingly incompatible positions. Moreover, Tian has not identified any evidence indicating that the investigation extended to matters that were unrelated to his unauthorized access to a computer. Even assuming that the investigation did extend to extraneous matters, Tian has not identified any evidence indicating that the portion of the investigative costs attributable to his unauthorized access to a computer came to $10,000 or less. As a result, we conclude that the IJ and the BIA correctly determined that Tian's conviction qualifies as an aggravated felony. It follows that Tian is removable as an aggravated felon, *see* 8 U.S.C. § 1227(a)(2)(A)(iii), and that he is therefore statutorily ineligible for asylum, *see id.* § 1158(b)(2)(A)(ii), (B)(i).

Tian next argues that the IJ and the BIA failed to apply the correct legal standard in determining that his conviction qualifies as a particularly serious crime. Ordinarily, an alien may not be removed to a country in which his life or freedom

out what he did to them and then discovered, in essence, he really didn't do anything to them, which is good. . . . His conviction then is based on two things. The conviction was for going in and doing that [*i.e.*, accessing Parametric's computer network and downloading the source code for QA Link]. . . . The loss figure is the loss for what it cost[] for [Parametric] to find out that that's all he did.

would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. *Id.* § 1231(b)(3)(A); 8 C.F.R. § 1208.16(b). This statutory restriction on the Attorney General's removal authority does not apply, however, "if the Attorney General decides that . . . the alien, having been convicted by a final judgment of a particularly serious crime is a danger to the community of the United States." 8 U.S.C. § 1231(b)(3)(B)(ii). Section 1231(b)(3)(B) provides that "an alien who has been convicted of an aggravated felony . . . for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime." Since Tian was sentenced to just 11 months' imprisonment, it fell to the Attorney General to determine whether Tian's conviction qualified as a particularly serious crime. *See id.* § 1231(b)(3)(B) (providing that the Attorney General may "determin[e] that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime"). Although the statute provides no additional guidance about what constitutes a particularly serious crime, *see Brue v. Gonzales*, 464 F.3d 1227, 1234 (10th Cir. 2006), the BIA has "generally examined a variety of factors and found that the 'consideration of the individual facts and circumstances is appropriate,'" *In re N-A-M-*, 24 I. & N. Dec. 336, 342 (B.I.A. 2007) (quoting *In re L-S-*, 22 I. & N. Dec. 645, 651 (B.I.A. 1999) (en banc)); *see In re Frentescu*, 18 I. & N. Dec. 244, 246-47 (B.I.A. 1982).

In *In re Frentescu*, the BIA announced that it "look[s] to such factors as the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community." 18 I. & N. Dec. at 247. More recently, the BIA noted in *In re N-A-M-* that its "approach . . . has evolved since the issuance of [its] decision in *Matter of Frentescu*." 24 I. & N. Dec. at 342. In particular, the BIA clarified that "once an alien is found to have committed a particularly serious crime, we no longer engage in a separate determination to address whether the alien is a danger to the community." *Id.* The "proper focus,"

according to the BIA, "is on the nature of the crime and not the likelihood of future serious misconduct." *Id.* (citing *In re Carballe*, 19 I. & N. Dec. 357 (B.I.A. 1986)).

Here, both the IJ and the BIA considered the relevant factors, including the nature and circumstances of Tian's conviction and the sentence imposed by the district court. Tian asserts that the "BIA failed to consider whether . . . [he] would be a danger to the community." But in fact, the BIA specifically referred to Tian's argument that "persons who commit economic crimes [do not] constitute a danger to the community," describing the claim as "speculative" and ultimately "unpersuasive." The BIA went on to say that it did not consider "a separate determination of danger to the community to be necessary," citing its decision in *In re N-A-M-*.

Having thoroughly examined the underlying opinions, we are left with no doubt that the IJ and the BIA applied the correct legal standard in determining that Tian's conviction qualifies as a particularly serious crime. Given the jurisdictional limitation under 8 U.S.C. § 1252(a)(2)(C) and (D) that we discussed above, we may not proceed to review the IJ's or the BIA's weighing of the relevant factors. *See Afridi v. Gonzales*, 442 F.3d 1212, 1218 (9th Cir. 2006) ("While we cannot reweigh evidence to determine if the crime was indeed particularly serious, we can determine whether the BIA applied the correct legal standard in making its determination."), *overruled on different grounds by Estrada-Espinoza v. Mukasey*, 546 F.3d 1147, 1160 n.15 (9th Cir. 2008) (en banc); *accord Solis v. Mukasey*, 515 F.3d 832, 835 (8th Cir. 2008) (citing the jurisdictional holding in *Afridi* with approval). Hence, we may not overturn the determination that Tian's conviction qualifies as a particularly serious crime. It follows that Tian is statutorily ineligible for withholding of removal. *See* 8 U.S.C. § 1231(b)(3)(B)(ii).[5]

---

[5]The Government notes that an alien who is ineligible for withholding of removal under § 1231(b)(3)(B) is also ineligible for withholding of removal under Article 3 of the CAT. *See* 8 C.F.R. § 1208.16(d)(2). While an alien may still be granted deferral of removal to a country where he is more likely than not to be

## III. CONCLUSION

For the foregoing reasons, we deny Tian's petition for review.

_____

tortured, *see id.* § 1208.17(a), Tian has not addressed that issue, so we need not consider it, *see, e.g.*, *Latorre v. United States*, 193 F.3d 1035, 1037 n.1 (8th Cir. 1999).