# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3230

_____

Charles Sokpa-Anku

*Petitioner*

v.

Loretta E. Lynch, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: May 18, 2016
Filed: August 26, 2016

_____

Before WOLLMAN, LOKEN, and BENTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

A jury convicted Charles Sokpa-Anku, a citizen of Ghana and a lawful permanent resident of the United States, of three counts of "medical assistance fraud" in violation of Minn. Stat. § 609.466. The Department of Homeland Security commenced removal proceedings, alleging that Sokpa-Anku was removable because he had been convicted of an aggravated felony. See 8 U.S.C. § 1227(a)(2)(A)(iii). The term "aggravated felony" includes "an offense that . . . involves fraud or deceit

in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i).

Conceding that his Minnesota conviction was an offense involving "fraud or deceit," Sokpa-Anku moved to terminate the proceedings, arguing that none of the three counts of conviction was a fraud offense in which victim loss exceeded $10,000. The Board of Immigration Appeals ("BIA") determined that the Minnesota conviction was an aggravated felony and ordered Sokpa-Anku removed to Ghana. Sokpa-Anku petitions for review of the BIA's decision. He argues that the BIA erred by aggregating losses from his three counts of conviction in calculating victim loss under § 1101(a)(43)(M)(i). We have jurisdiction to consider this issue of law. See Tian v. Holder, 576 F.3d 890, 895 (8th Cir. 2009). We deny the petition for review.

From July 2008 until he was terminated in December 2012, Sokpa-Anku owned and operated a home health care business that was an enrolled Minnesota Medicaid provider. In a March 2014 criminal complaint, state authorities alleged that a Medicaid fraud investigation revealed that, in 2009 and 2010, Sokpa-Anku "consistently billed for [Medicaid] services without supporting documentation." The complaint charged him with four counts of intentionally filing false claims for Medicaid reimbursement that "resulted in an overpayment to [Sokpa-Anku] of $23,729.67 for [Medicaid] services allegedly provided in 2009 and 2010." Each count alleged a specific date range and the amount paid by the Minnesota Department of Human Services ("DHS") for Medicaid services: Count 1, $9,860; Count 2, $6,271; Count 3, $2,607; and Count 4, $4,983. Count 3 was dismissed before trial.

The jury convicted Sokpa-Anku of counts 1, 2, and 4. Those counts alleged fraud in sequential time periods based on "the dates reimbursement claims were paid by DHS" -- August 4, 2009-February 2, 2010; February 17, 2010-August 3, 2010; and August 31, 2010-January 4, 2011. The state court Register of Actions reports that the

court imposed concurrent sentences on the three counts and ordered Sokpa-Anku to pay $20,791 in restitution *on each count*.

In Nijhawan v. Holder, 557 U.S. 29, 36 (2010), the Supreme Court held that the $10,000 threshold in § 1101(a)(43)(M)(i) is not an element of a fraud offense and therefore may be proved by evidence of the particular circumstances of an alien's specific offense. Applying this "circumstance specific approach," the IJ concluded that Sokpa-Anku caused his victim, the Minnesota DHS, an actual loss greater than $10,000, whether the loss is calculated by aggregating the amount pleaded for each count in the criminal complaint, or by the order to pay $20,791 in restitution on each count.  The IJ explained:

> Although [Sopka-Anku] was convicted of 3 different counts, all of the counts were for the same offense, namely Medical Assistance Fraud. The descriptions of the counts are also nearly identical to one another. In committing his offense, [Sopka-Anku] utilized his business to commit the same conduct (submitting false reimbursement claims) against the same victim . . . over a continuous period in 2009 and 2010.  Tellingly, [Sopka-Anku's] submitted claims were divided into four timeframes . . . merely for the purposes of charging.

The BIA adopted and affirmed the IJ's analysis, noting that the three counts of conviction "were for the same crime, involved the same victim and essentially the same facts, as well as the same plea agreement."

Sokpa-Anku argues that the IJ and BIA erred by "aggregating" losses from multiple "offenses."  Noting that § 1101(a)(43)(M)(i) uses a singular term, "offense," he argues that each count of conviction must be considered a distinct "offense." Though Nijhawan did not involve a multi-count fraud conviction, Sopka-Anku's textual argument is contrary to the Court's opinion, which consistently used the terms "offense" and "conviction" interchangeably.  The Court framed the inquiry in

Nijhawan as whether "a prior *conviction* involved a fraud with the relevant loss to victims," and whether "the loss involved in a prior fraud or deceit *conviction* amounted to at least $10,000." Id. at 41 (emphases added). The Court explained that the $10,000 threshold requires a court to "look to the facts and circumstances underlying an offender's *conviction*." Id. at 34 (emphasis added). The Court endorsed prior decisions holding that the "the loss must be tied to the specific *counts* covered by the conviction;" it may not be tied to "acquitted or dismissed counts or general conduct." Id. at 42 (emphasis added; quotations omitted); see James v. Gonzales, 464 F.3d 505, 510-12 (5th Cir. 2006); Knutsen v. Gonzales, 429 F.3d 733, 736-40 (7th Cir. 2005); Khalayleh v. INS, 287 F.3d 978, 980 (10th Cir. 2002).

In this case, there is one conviction, and the total loss is directly tied to three specific fraud counts "covered by the conviction." Sokpa-Anku responds that "courts must determine loss to victims tied to each count" separately, unless the underlying conviction was for a scheme or conspiracy. But the cases he cites predated Nijhawan and dealt with whether acquitted counts and general conduct can be considered in calculating loss amount. Sokpa-Anku cites no case holding that multiple fraud counts *of conviction* cannot be aggregated in determining whether the conviction was an aggravated felony under § 1101(a)(43)(M)(i).

In this case, we need not decide whether *totally unrelated* fraud counts in a single conviction may be aggregated. As the BIA recognized, Sokpa-Anku's three fraud counts of conviction were part of a sufficiently interrelated fraud to warrant aggregation, whether or not the criminal complaint included an express allegation of conspiracy or scheme to defraud. Cf. Eversley-MacClaren v. Holder, 578 F. App'x 664, 665-66 (9th Cir. 2014) (nine fraud counts of conviction aggregated where criminal information alleged that each was "connected in its commission" with another). Likewise, the order to pay an aggregated restitution amount demonstrated that Sopka-Anku did not commit multiple, unrelated frauds. See Nijhawan, 557 U.S. at 43 (restitution order indicative of loss amount); Munroe v. Ashcroft, 353 F.3d 225,

227-28 (3d Cir. 2003) (same); <u>In re Babaisakov</u>, 24 I. & N. Dec. 306, 319 (2007) (same).

For the foregoing reasons, we deny the petition for review.

———————————————