# United States Court of Appeals
## For the Eighth Circuit

---

No. 19-2842

---

Laith Shakir Shazi

*Petitioner*

v.

Monty Wilkinson, Acting Attorney General of the United States; David Pekoske, Acting Secretary, Dept. of Homeland Security

*Respondent*s[1]

---

Petition for Review of an Order of the
Board of Immigration Appeals

---

Submitted: October 21, 2020
Filed: February 11, 2021

---

Before BENTON, SHEPHERD, and KELLY, Circuit Judges.

---

SHEPHERD, Circuit Judge.

Laith Shakir Shazi, a native and citizen of Iraq, petitions for review of an order of the Board of Immigration Appeals (BIA) upholding the decision of an immigration judge (IJ) that terminated Shazi's withholding of removal status; denied

---

[1]Respondents Wilkinson and Pekoske are automatically substituted for their predecessors under Federal Rule of Appellate Procedure 43(c)(2).

his application for protection under the Convention Against Torture (CAT); and denied his motion to remand based on new evidence. For the following reasons, we grant the petition for review.

I.

Shazi is an Iraqi native and citizen born in a neighborhood of Baghdad, Iraq, on March 20, 1971. Shazi was a member of the National Iraqi Democrats, an organization that assisted the United States and allied forces in their effort to overthrow Saddam Hussein in the mid-1990s. Shazi aided the movement by taking photographs of and collecting information and intel on suspected biological weapon development sites in Baghdad. As a result of this experience, Shazi allegedly suffers from post-traumatic stress disorder (PTSD), anxiety, and depression. Subsequently, the Red Cross and the United States partnered to extract those assisting the American forces, including Shazi, and transport them ultimately to Guam. On or about October 23, 1996, Shazi was admitted to the United States in Guam as a parolee, and the former Immigration and Naturalization Service granted his application for asylum under 8 U.S.C. § 1158(a) on March 7, 1997.

Once in the United States, Shazi worked with a security firm to further assist American troops by teaching them Arabic and how to "blend in" and avoid danger in Iraq. His involvement ceased in 2003 when Saddam Hussein was killed. Shazi developed a criminal history beginning in 2007, when he was convicted of making terroristic threats and assault in the fifth degree. In 2011, Shazi was convicted of malicious punishment of a child and felony domestic assault. In response, the Department of Homeland Security (DHS) commenced removal proceedings against Shazi in 2012, charging him with removability pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii), (iii), and (E)(i). The IJ sustained all the charges of removal based on the convictions but granted Shazi's application for withholding of removal.

In 2016, Shazi was convicted of making terroristic threats, in violation of Minn. Stat. § 609.713, subdiv. 1, and domestic abuse, in violation of Minn. Stat.

§ 518B.01, subdiv. 14(a). In 2018, DHS moved the immigration court to reopen Shazi's removal proceedings for the purpose of terminating his grant of withholding-of-removal status based on these convictions. The IJ granted the motion to reopen but continued the request to terminate withholding-of-removal status. Shazi responded by opposing the termination and, in the alternative, applying for CAT protection. The IJ held a hearing on the matter and ultimately terminated Shazi's withholding-of-removal status and denied his application for protection under CAT. The IJ found that Shazi lacked credibility because his testimony contained numerous inconsistencies. The IJ found that Shazi's second conviction for making terroristic threats, in 2016, constituted a "particularly serious crime" under 8 U.S.C. § 1231(b)(3)(B)(ii), which barred withholding of removal. In doing so, the IJ rejected Shazi's argument that his mental health conditions mitigated the seriousness of the crime. The IJ reasoned that an individual's struggle with mental health is not to be considered in a particularly serious crime determination under Matter of G-G-S-, 26 I. & N. Dec. 339, 345 (BIA 2014). Finally, the IJ denied Shazi's application for deferral of removal under CAT because Shazi did not produce enough evidence to show a specific danger to himself, but instead showed only general countrywide violence that affects the Iraqi population as a whole.

Shazi appealed the IJ's decision to the BIA, arguing that the IJ's particularly serious crime finding was based on an inadequate consideration of Shazi's mental health condition at the time the offense was committed. Shazi contended that Matter of G-G-S- was an impermissible bar to mental health evidence based on the Ninth Circuit's decision in Gomez-Sanchez v. Sessions, 892 F.3d 985 (9th Cir. 2018). The BIA determined that an individual's mental health does not diminish the seriousness of the relevant conviction. The BIA explicitly rejected Shazi's reliance on Gomez-Sanchez because it arose out of the Ninth Circuit and was not controlling in Shazi's case. Shazi contemporaneously filed a motion to remand his claim for protection under CAT based on new evidence. The BIA found that Shazi failed to meet his burden of proof to be granted protection under CAT. While Shazi presented new evidence, the BIA disregarded it because Shazi did not establish why it was

previously unavailable at the time of the IJ's decision. Thus, the BIA affirmed the IJ's decision on both grounds. This appeal followed.

## II.

Shazi petitions this Court for review, arguing the BIA erroneously terminated his withholding of removal and denied him protection under CAT. Specifically, Shazi argues that the IJ and the BIA erred in (1) concluding that Shazi's conviction for making terroristic threats was a particularly serious crime, barring withholding of removal; (2) finding Shazi's testimony not credible; (3) concluding that Shazi failed to support his petition for deferral of removal under CAT; and (4) concluding that his newly presented evidence did not warrant remand. "'We generally review the BIA's decision as the final agency action,' but where 'the BIA essentially adopted the IJ's opinion while adding in some of its own reasoning, we review both decisions.'" Sharif v. Barr, 965 F.3d 612, 618 (8th Cir. 2020) (citation omitted).

## A.

Shazi first argues that the IJ and BIA erred in concluding that his conviction for terroristic threats constituted a particularly serious crime, barring withholding of removal. A noncitizen has two vehicles by which he can obtain withholding of removal—8 U.S.C. § 1231 (statutory withholding of removal) and CAT—and the particularly serious crime bar prohibits both.[2] See 8 U.S.C. § 1231(b)(3)(B)(ii); 8

---

[2]Prior to Nasrallah v. Barr, 140 S. Ct. 1683 (2020), the distinction between statutory withholding of removal and CAT withholding of removal was largely insignificant when reviewing the claim of a noncitizen who was removable as a "criminal alien" and subject to the particularly serious crime bar. We previously determined that we were precluded from reviewing the BIA's factual findings as to both forms of withholding of removal in such circumstances. See, e.g., Lovan v. Holder, 574 F.3d 990, 998 (8th Cir. 2009). However, Nasrallah held that CAT orders are not final orders of removal subject to our jurisdictional limitation for "criminal aliens" as described in 8 U.S.C. § 1252(a)(2)(C). See Nasrallah, 140 S. Ct. at 1694. Therefore, we are able to review the factual findings as they relate to a noncitizen's

C.F.R. § 1208.16(d). Insofar as Shazi's arguments relate to his claim for statutory withholding of removal, "[o]ur jurisdiction is limited to constitutional claims and questions of law" because Shazi "is removable as a 'criminal alien.'" Constanza v. Holder, 647 F.3d 749, 753 (8th Cir. 2011) (per curiam); 8 U.S.C. § 1252(a)(2)(C)-(D). Whether the BIA applied the correct legal framework in its particularly serious crime determination is a question of law and reviewable even under our limited jurisdiction.[3] See Tian v. Holder, 576 F.3d 890, 894-95 (8th Cir. 2009). "We review questions of law de novo but accord substantial deference to the BIA's interpretation of immigration statutes and regulations." Marambo v. Barr, 932 F.3d 650, 654 (8th Cir. 2019) (citation omitted). Specifically, we apply Chevron's[4] two-step analysis to the BIA's construction of the Immigration and Nationality Act. See Velasquez v. Barr, 979 F.3d 572, 576 (8th Cir. 2020).

"[T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A).[5] However, this mandatory

---

CAT claim, which includes the factual findings underpinning the BIA's particularly serious crime determination.

[3]To the extent that such arguments relate to Shazi's claim for withholding of removal under CAT, we review the BIA's factual findings under the substantial evidence standard; however, such review is unnecessary here because Shazi's arguments are purely legal in nature. Nasrallah, 140 S. Ct. at 1692 (citation omitted).

[4]Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984).

[5]To obtain withholding of removal under CAT, the noncitizen must "establish that it is more likely than not that he . . . would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). However, the standard of the particularly serious crime bar is the same under both forms of withholding of removal. See 8 C.F.R. § 1208.16(d) (requiring mandatory denial of withholding of removal under CAT if the noncitizen falls within the particularly serious crime bar as codified at 8 U.S.C. § 1231(b)(3)(B)).

grant of withholding of removal does not apply "if the Attorney General decides that . . . the alien, having been convicted by a final judgment of a particularly serious crime is a danger to the community of the United States." Id. § 1231(b)(3)(B)(ii); see also 8 C.F.R. § 1208.16(d). The phrase "particularly serious crime" is not defined, but "an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years" is a particularly serious crime per se. 8 U.S.C. § 1231(b)(3)(B). Otherwise, the determination is made on a case-by-case basis and includes "a variety of factors and . . . consideration of the individual facts and circumstances [of the conviction]." Marambo, 932 F.3d at 655 (alteration in original) (quoting Tian, 576 F.3d at 897). "These factors include 'the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and most importantly whether the type and circumstances of the crime indicate that the alien will be a danger to the community.'" Id. (quoting Tian, 576 F.3d at 897). Although Shazi's conviction is not a particularly serious crime per se, the IJ and the BIA determined that his conviction fit the category based on the aforementioned factors.

Shazi first contends that the IJ and the BIA failed to consider whether Shazi would be a danger to the community and argues that the facts and circumstances of his conviction do not demonstrate that he is a future threat. However, we have recognized that the BIA's construction determining that the "proper focus . . . is on the nature of the crime and not the likelihood of future serious misconduct" is reasonable, and we have afforded such construction deference. Tian, 576 F.3d at 897 (quoting In re N-A-M-, 24 I. & N. Dec. 336, 342 (BIA 2007)). As such, "once an alien is found to have committed a particularly serious crime, we no longer engage in a separate determination to address whether the alien is a danger to the community." Id. (quoting In re N-A-M-, 24 I. & N. Dec. at 342). Therefore, the IJ and the BIA did not err in failing to consider Shazi's likelihood of future misconduct.

Shazi next contends that the IJ and the BIA impermissibly refused to consider his mental illness as a factor in their particularly serious crime determinations. The IJ determined, and the BIA affirmed, that Shazi's alleged mental illnesses—PTSD,

anxiety, and depression—did not mitigate the seriousness of Shazi's conviction as a matter of law under Matter of G-G-S-. Shazi points out, however, that the Ninth Circuit Court of Appeals reversed Matter of G-G-S- because it was likely antagonistic to Congress's intent and was inconsistent with In re N-A-M-. See generally Gomez-Sanchez, 892 F.3d 985. Having not previously considered this interpretation, we review the BIA's construction under Chevron's two-step analysis.

We must first determine "whether Congress has directly spoken to the precise question at issue." Velasquez, 979 F.3d at 576 (quoting Chevron, 467 U.S. at 842). "If the statute's meaning is clear, then both the courts and agencies 'must give effect to the unambiguously expressed intent of Congress.'" Id. (quoting Chevron, 467 U.S. at 842-43). Here, as we noted above, the statute and accompanying regulations merely define a category of per se particularly serious crimes but are otherwise silent as to the definition of "particularly serious crime." See 8 U.S.C. § 1231(b)(3)(B)(ii); 8 C.F.R. § 1208.16(d). The statute provides no further guidance as to how the Attorney General should view other convictions outside of this per se category, stating generally that the Attorney General otherwise has the power to determine that convictions are particularly serious crimes. See 8 U.S.C. § 1231(b)(3)(B).

At least the Ninth Circuit has found that such silence, coupled with the presence of a per se category, evidences Congress's intent that every conviction outside of that category requires a case-by-case analysis. Gomez-Sanchez, 892 F.3d at 991-92 (citing Blandino-Medina v. Holder, 712 F.3d 1338, 1345 (9th Cir. 2013)). While the Ninth Circuit relied in part upon the principle of *expressio unius est exclusio alterius*, Blandino-Medina, 712 F.3d at 1345, we believe that implying an entire administrative framework from the inclusion of only one item stretches the interpretive canon beyond its limits. See Barnhart v. Peabody Coal Co., 537 U.S. 149, 168 (2003) ("[T]he canon . . . does not apply to every statutory listing or grouping; it has force only when the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." (citation omitted)). Our hesitation to join the Ninth Circuit on *this* basis is bolstered by the statute's subsequent unqualified grant

of permission to the Attorney General to otherwise "determine that . . . an alien has been convicted of a particularly serious crime." 8 U.S.C. § 1231(b)(3)(B). Instead, we understand Congress's silence on the matter to be just that: silence.

Therefore, because we determine the statute to be ambiguous, we proceed to Chevron's second step and determine whether the BIA's interpretation is "based on a permissible construction of the statute." Velasquez, 979 F.3d at 576 (quoting Chevron, 467 U.S. at 843). We will "only set [the BIA's construction] aside if it is 'arbitrary, capricious, or manifestly contrary to the statute.'" Estrada-Rodriguez v. Lynch, 825 F.3d 397, 403-04 (8th Cir. 2016) (quoting Chevron, 467 U.S. at 844). The BIA, not the statute, created the traditional case-by-case analysis for those convictions falling outside of the per se category. In In re N-A-M-, the BIA addressed the scope of the evidence permissible for a particularly serious crime determination:

> It has been our practice to allow both parties to explain and introduce evidence as to why a crime is particularly serious or not. We see no reason to exclude otherwise reliable information from consideration in an analysis of a particularly serious crime once the nature of the crime, as measured by its elements, brings it within the range of a "particularly serious" offense.

24 I. & N. Dec. at 344. In Marambo v. Barr, we recognized the BIA's position in In re N-A-M- that "*all reliable information* may be considered in making a particularly serious crime determination, including the conviction records and sentencing information, as well as other information *outside the confines of a record of conviction*." 932 F.3d at 655 (emphases added) (quoting In re N-A-M-, 24 I. & N. Dec. at 342). In adopting the BIA's position as the law of the circuit, we found that the IJ and the BIA did not err in considering facts and circumstances from the petitioner's criminal complaint in determining whether he committed a particularly serious crime. Id. at 655-56. In recognizing "all reliable information may be considered," even that which is "outside the confines of the record of conviction," we find that the BIA's categorical ban on evidence concerning mental health issues

- 8 -

is arbitrary and capricious.  See id. at 655; see also Encino Motorcars, LLC v. Navarro, 136 S. Ct. 2117, 2120 (2016) ("An '[u]nexplained inconsistency' in agency policy is 'a reason for holding an interpretation to be an arbitrary and capricious change from agency practice . . . .'" (alteration in original) (citation omitted)).

The BIA adopted its categorical ban on mental health evidence in Matter of G-G-S-, 26 I. & N. Dec. 339 (BIA 2014).  Relying in part on In re N-A-M-, the BIA determined that: "[A petitioner's] mental condition does not relate to the pivotal issue in a particularly serious crime analysis, which is whether the nature of his conviction, the sentence imposed, and the circumstances and underlying facts indicate that he posed a danger to the community."  Id. at 346.  While the BIA gave various reasons for its decision, we join the Ninth Circuit and find the BIA's conclusion "to be unreasonable."  See Gomez-Sanchez, 892 F.3d at 996.  First, the BIA based its conclusion in part on the premise that "consideration of an alien's mental health as a factor in the criminal act falls within the province of the criminal courts."  Matter of G-G-S-, 26 I. & N. Dec. at 345.  This assumption fails to recognize that "the mental health evidence the individual wishes to offer in the immigration court may never have been presented to the criminal court."  Gomez-Sanchez, 892 F.3d at 994.  Furthermore, it neglects the Supreme Court's recognition that: "Immigration law can be complex, and it is a legal specialty of its own.  Some members of the bar who represent clients facing criminal charges, in either state or federal court or both, may not be well versed in it."  Padilla v. Kentucky, 559 U.S. 356, 369 (2010).

Second, the BIA refrained from such consideration because it would require an IJ to "go behind the decisions of the criminal judge and reassess any ruling on criminal culpability."  Matter of G-G-S-, 26 I. & N. Dec. at 345.  "Whether and to what extent an individual's mental illness or disorder is relevant to his or her commission of an offense and conviction for the crime are issues best resolved in criminal proceedings."  Id.  But whether and to what extent an individual's mental illness or disorder explains why a crime is particularly serious or not for immigration

purposes is a distinct determination to be resolved by the IJ and the BIA. See Gomez-Sanchez, 892 F.3d at 993-94.

We recognize that the focus of a particularly serious crime analysis is on the nature of the crime and does not involve unrelated factors or offender characteristics that do not bear upon "the gravity of a crime." In re N-A-M-, 24 I. & N. Dec. at 343. However, we fail to understand how a petitioner's mental health can *never* be relevant to "the circumstances and underlying facts" of the conviction, especially, as the BIA noted, in light "of the impact mental illness can have on an individual's behavior." Matter of G-G-S-, 26 I. & N. Dec. at 347. As such, we find that the BIA's categorical bar of consideration of mental health evidence, as contemplated in Matter of G-G-S-, is an arbitrary and capricious construction of 8 U.S.C. § 1231, and we reject such a categorical evidentiary bar in the particularly serious crime analysis. As such, we reaffirm our position in Marambo that "all reliable information" pertaining to the nature of the crime, including evidence of mental health conditions, may be considered in a particularly serious crime analysis. 932 F.3d at 655.

B.

Shazi next argues that the IJ and the BIA erred in finding Shazi's testimony not credible. We lack the jurisdiction to review such claims as they relate to the termination of Shazi's statutory withholding of removal. See Constanza, 647 F.3d at 753; Garcia v. Barr, 954 F.3d 1095, 1097 (8th Cir. 2020) (noting that credibility determinations are determinations of fact). To the extent that such adverse credibility determination impacted Shazi's claim for relief under CAT, we review the BIA's factual findings for substantial evidence: "[t]he agency's 'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Nasrallah, 140 S. Ct. at 1692 (citation omitted); see Shire v. Barr, 967 F.3d 722, 726 (8th Cir. 2020).

When making a credibility determination as part of a proceeding, the IJ:

> may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

In re J-Y-C-, 24 I. & N. Dec. 260, 262 (BIA 2007) (emphasis omitted) (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)). "It is well settled that an [IJ] is in the best position to make credibility findings because he or she sees the witnesses as the testimony is given." R.K.N. v. Holder, 701 F.3d 535, 538 (8th Cir. 2012) (citation omitted). Moreover, "[w]hen the BIA has adopted and affirmed the IJ's adverse credibility determination, we defer to those findings if 'supported by specific, cogent reasons for disbelief.'" Id. (citation omitted).

Here, the BIA implicitly affirmed the IJ's adverse credibility determination by referring to the IJ's factual findings which were contrary to Shazi's testimony. The IJ supported these factual findings with specific reasons throughout the opinion. A majority of the inconsistencies the IJ identified related to Shazi's testimony that it was "impossible" for him to have physically harmed the mother of his children. The IJ referenced the multiple police reports of domestic abuse in the record and found such testimony "completely false." The IJ then recited the numerous times that Shazi contradicted himself between direct examination and the court's examination. Finally, the IJ noted inconsistencies in Shazi's recollection of years and his mistaken assumption of his status as a U.S. citizen, but gave such discrepancies little weight. The IJ ultimately made an adverse credibility finding. Because the IJ supported her

determination with specific, cogent reasons for her disbelief, including citations to various materials in the record, we find no error in the IJ's or the BIA's conclusions.

## C.

Shazi next contends that the BIA erred in concluding that Shazi had not established that he was more likely than not to be tortured upon his return to Iraq. We review the BIA's factual determinations for substantial evidence. See Shire, 967 F.3d at 726. To receive protection under CAT, the applicant must show "that it is more likely than not that he or she would be tortured if removed to the proposed country." 8 C.F.R. § 1208.16(c)(2).[6] Torture includes:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

---

[6]CAT provides two means of relief: withholding of removal, as discussed supra Section I.A, and deferral of removal. Under either form of relief, a noncitizen must show that it is more likely than not he will be tortured upon his return to the proposed country. See 8 C.F.R. § 1208.16(c); id. § 1208.17(a). When a noncitizen is barred from CAT withholding of removal, e.g., because he committed a particularly serious crime under 8 U.S.C. § 1231(b)(3)(B)(ii), he is still entitled to deferral of removal if he has met his burden under CAT. See 8 C.F.R. § 1208.16(c)(4). The only notable difference between the two forms of relief is the method by which such relief is terminated. While DHS must generally move to reopen the case in compliance with id. §§ 1003.2, 1003.24 to terminate CAT withholding of removal, see id. § 1208.23(f); DHS need only comply with the lower standard established by id. § 1208.17(d) to terminate deferral of removal.

Id. § 1208.18(a)(1). The IJ must consider "all evidence relevant to the possibility of future torture," including: "Evidence of past torture upon the applicant"; "Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured"; "Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable"; and "Other relevant information regarding conditions in the country of removal." Id. § 1208.16(c)(3).

Shazi argues that he presented voluminous evidence to show that he would more likely than not be tortured by the Iraqi government upon his return to Iraq. He asserts that the government and Islamic extremists would apprehend and torture him on the basis of his history with the United States military. The IJ found the record devoid of any support for Shazi's position. While the record contained some evidence of torture of military assistants at the hands of the Iraqi government and Islamic extremists, the IJ pointed out that such instances involved Iraqi citizens affiliated with the United States military only after 2003. The IJ found that the record did not contain evidence that those involved with operations in the mid-1990s, such as Shazi, were likely to experience the same treatment. The IJ then recognized that ISIS may carry out such attacks but that the organization is a private entity actively opposed, not acquiesced to, by the Iraqi government. The BIA affirmed the IJ, and we refuse to disturb a factual finding when the record would not compel any reasonable adjudicator to conclude to the contrary. See Nasrallah, 140 S. Ct. at 1692.

## D.

Finally, Shazi argues that the new evidence he presented to the BIA warranted remand to the IJ for further determination because the evidence supported a new theory that Shazi would more likely than not be tortured as a result of lacking valid Iraqi documents upon his return. We review the BIA's denial of a motion to remand for abuse of discretion and will only find such when the BIA "gives no rational explanation for its decision, departs from its established policies without explanation, relies on impermissible factors or legal error, or ignores or distorts the

- 13 -

record evidence." Sharif, 965 F.3d at 622 (citation omitted). "The BIA will not remand to the IJ to consider additional evidence proffered on appeal if the evidence 'was available and could have been presented at an earlier hearing.'" Berte v. Ashcroft, 396 F.3d 993, 997 (8th Cir. 2005) (quoting In re Adolfo Jose Grijalva, 21 I. & N. Dec. 27, 36 (BIA 1995)). When "the evidence was previously unavailable, the BIA will remand only if the evidence is 'of such a nature that the [BIA] is satisfied that if proceedings before the [IJ] were reopened, . . . the new evidence would likely change the result in the case.'" Id. (second alteration in original) (quoting Matter of Coelho, 20 I. & N. Dec. 464, 473 (BIA 1992)).

Here, Shazi submitted multiple expert affidavits supporting his new theory regarding the torture of Iraqi natives who lack identification documents. While these affidavits were dated after the IJ's determination, the BIA determined that Shazi failed to explain how Iraq's country conditions had changed since the IJ's decision and why this evidence was previously unavailable. The BIA further found that all but one of the additional reports predated the IJ's decision and that the one viable report was unlikely to change the result of the IJ's determination. In making these conclusions, the BIA did not depart from its established policies and, therefore, did not abuse its discretion. See Sharif, 965 F.3d at 619.

III.

For the foregoing reasons, we grant the petition for review for further consideration of Shazi's mental health evidence in determining whether he is barred from withholding of removal based on a particularly serious crime; otherwise we deny the petition. Accordingly, we vacate and remand to the BIA for further proceedings consistent with this decision.

_____