# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-3520
_____

Salvador Gutierrez-Vargas

*Petitioner*

v.

Merrick B. Garland, Attorney General of the United States

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: May 11, 2022
Filed: August 1, 2022
_____

Before COLLOTON, WOLLMAN, and SHEPHERD, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Salvador Gutierrez-Vargas petitions for review of the Board of Immigration Appeals's (BIA) denial of his applications for asylum, withholding of removal, and deferral of removal. We deny the petition.

## I. Background

Gutierrez-Vargas, a native and citizen of Mexico, entered the United States without inspection in 1979. One evening in June 2013, Gutierrez-Vargas and his family returned home to find that his daughter's boyfriend, Milton Miranda, had murdered a man in their house. To prevent Gutierrez-Vargas from calling the police, Miranda took his phone and threatened to kill his family. He then told Gutierrez-Vargas to help him bury the body. The two men moved the victim's body to the back of the house, where Miranda, using Gutierrez-Vargas's tools, dismembered the body while Gutierrez-Vargas dug a hole in the backyard. With Gutierrez-Vargas's daughter's help, they put the body parts into garbage bags, which they then buried in the hole.

Gutierrez-Vargas was arrested in August 2013 after his daughter told police about the murder and the location of the body. He was held in custody in Illinois until his state court conviction in 2018 of dismembering a human body in violation of 720 Ill. Comp. Stat. Ann. 5/12-20.5 and concealing a homicidal death in violation of 720 Ill. Comp. Stat. Ann. 5/9-3.4(a), for which he was sentenced to 15 years' and 5 years' imprisonment respectively. He was released from custody in February 2021, at which time the Department of Homeland Security initiated removal proceedings against him under 8 U.S.C. §§ 1182(a)(6)(A)(i) and 1182(a)(2)(A)(i)(I). Gutierrez-Vargas admitted removability but applied for asylum under Section 208 of the Immigration and Nationality Act (INA), withholding of removal under INA Section 241(b)(3), and withholding and deferral of removal under the Convention Against Torture (CAT), 8 C.F.R. §§ 1208.16 and 1208.17.

During a removal hearing, Gutierrez-Vargas testified that Miranda had told him and his daughter that he was a member of the Zetas, a criminal gang, and that Miranda had carved a "Z" into the victim's face. Gutierrez-Vargas testified that the

-2-

Zetas have members "all over," including in his home state in Mexico, but he did not know whether Miranda had close personal relationships there. He expressed fear that if he returned to Mexico, members of the Zetas or other friends of Miranda would harm him and his family. Gutierrez-Vargas explained that prior to his arrest, an unknown man had stopped his wife while she was running in the park and, after mentioning Miranda, had told her that "they [were] watching [the family]." Once Gutierrez-Vargas was in jail, he was also approached by men claiming to be Miranda's friends, who told him that "they knew everything" and threatened him. He did not know if any of these people were members of the Zetas. Gutierrez-Vargas stated that his family in Mexico had not been threatened or harmed by the Zetas, but he did not believe that the Mexican government would protect him because of corruption in their ranks. Gutierrez-Vargas further testified that he had never been harmed by the Mexican government, but he was afraid that the government would associate him with the Zetas because of his role in the murder committed by Miranda.

An immigration judge (IJ) concluded that Gutierrez-Vargas was not eligible for asylum or withholding of removal because his conviction for dismembering a human body constituted a particularly serious crime. The IJ further concluded that he was not eligible for deferral of removal because he failed to demonstrate that it was more likely than not that he would be tortured if returned to Mexico. The BIA affirmed that decision. Gutierrez-Vargas petitions for review, arguing that the conduct underlying his conviction did not constitute a "particularly serious crime" and that the IJ abused his discretion in determining that Gutierrez-Vargas did not qualify for deferral of removal under CAT.

## II. Discussion

"We review the Board's decision as the final agency action, including the IJ's findings and reasoning to the extent that the Board expressly adopted them." Mumad v. Garland, 11 F.4th 834, 837 (8th Cir. 2021). We review the BIA's conclusions of

-3-

law *de novo* and give <u>Chevron</u> deference to its interpretation of immigration statutes and regulations. <u>Hernandez v. Holder</u>, 760 F.3d 855, 858–59 (8th Cir. 2014); <u>see</u> <u>Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 843–45 (1984). We do not disturb the BIA's findings of fact "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## A. Particularly Serious Crime Determination

A petitioner is ineligible for asylum, withholding of removal under the INA, and withholding of removal under CAT if the petitioner, "having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States." 8 U.S.C. § 1158(b)(2)(A)(ii); <u>see also</u> 8 U.S.C. § 1231(b)(3)(B)(ii); 8 C.F.R. § 1208.16(d)(2). We review *de novo* "[w]hether the BIA applied the correct legal framework in its particularly serious crime determination." <u>Shazi v. Wilkinson</u>, 988 F.3d 441, 447 (8th Cir. 2021).

In making this determination, the BIA considers the nature of the crime of conviction, the underlying facts and circumstances, and the sentence imposed. <u>Tian v. Holder</u>, 576 F.3d 890, 897 (8th Cir. 2009). The BIA may consider "all reliable information" regarding these factors. <u>In re N-A-M-</u>, 24 I. & N. Dec. 336, 342 (BIA 2007). "[C]rimes against persons are more likely to be categorized as particularly serious," <u>id.</u> at 343, but the "particularly serious" designation is not limited to such crimes, <u>Denis v. Att'y Gen.</u>, 633 F.3d 201, 216 (3d Cir. 2011). Although the BIA previously considered whether "the alien will be a danger to the community," it has since ceased to engage in this analysis, focusing instead "on the nature of the crime." <u>Tian</u>, 576 F.3d at 897 (first quote quoting <u>Matter of Frentescu</u>, 18 I. & N. Dec. 244, 247 (BIA 1982); second quote quoting <u>In re N-A-M-</u>, 24 I. & N. Dec. at 342). We

defer to the BIA's determination of the proper focus and therefore reject Gutierrez-Vargas's argument that the BIA erred by failing to consider whether he is a danger to the community. See Mumad, 11 F.4th at 840 ("We defer to the Board's determination that the proper focus . . . is on the nature of the crime and not the likelihood of future serious misconduct." (alteration in original) (quotation marks and citation omitted)).

We conclude that the IJ and the BIA applied the correct legal framework in determining that Gutierrez-Vargas's conviction constituted a particularly serious crime. The IJ noted the elements of the offense, Gutierrez-Vargas's role in dismembering and concealing the victim's body, his "lengthy prison sentence," and the state courts' characterization of Gutierrez-Vargas's actions.

Gutierrez-Vargas argues that the IJ erred in concluding that his crime of dismemberment was against a person because the victim was already deceased. The IJ agreed with the Third Circuit's decision in Denis, however, which concluded that a crime need not be against a person to be particularly serious. See 633 F.3d at 216 (considering the petitioner's crime of tampering with physical evidence by dismembering and concealing a human body and concluding that "[t]he fact that crimes against persons are considered particularly serious does not suggest that other offenses—such as the crime of conviction here—cannot also be viewed as particularly serious.").

Furthermore, the jurisdictional limitation under 8 U.S.C. § 1252(a)(2)(C) precludes us from reviewing the IJ's and BIA's weighing of the relevant factors. See Tian, 576 F.3d at 897; 8 U.S.C. § 1252(a)(2)(C) ("[N]o court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of

having committed a criminal offense covered in section 1182(a)(2) . . . of this title.").[1] Gutierrez-Vargas is therefore ineligible for asylum and withholding of removal.

## B.  CAT Protection

An applicant who is ineligible for withholding of removal because of a conviction for a particularly serious crime is still eligible for deferral of removal under CAT if he is more likely than not to be tortured by, at the instigation of, or with the consent or acquiescence of a person acting in an official capacity of the country of removal.  8 C.F.R. §§ 1208.17(a), 1208.18(a)(1).  In this analysis, "all evidence relevant to the possibility of future torture [is] considered," including evidence of past torture against the applicant; the ability of the applicant to relocate within the country of removal to where torture is unlikely; "gross, flagrant or mass violations of human rights within the country of removal;" and other relevant conditions in the country of removal.  8 C.F.R. § 1208.16(c)(3).  We review the BIA's finding regarding the likelihood of future torture under a "deferential substantial evidence standard," granting relief only when "the record evidence [is] so compelling that no reasonable factfinder could fail to find in favor of the petitioner."  Silvestre-Giron v. Barr, 949 F.3d 1114, 1117 (8th Cir. 2020) (internal quotation marks and citations omitted).

Gutierrez-Vargas points to his and his wife's encounters with associates of Miranda as evidence that it is more likely than not that he and his family would be

---

[1]Because Gutierrez-Vargas is subject to removal under 8 U.S.C. § 1182(a)(2)(A)(i)(I), the jurisdictional limitation set forth in § 1252(a)(2)(C) applies. We thus do not review for abuse of discretion the determination that his crime is particularly serious.  Compare Tian, 576 F.3d at 894 (deciding that the jurisdictional limitation under § 1252(a)(2)(C) applied because, as here, the limitation explicitly cross-referenced the basis of the petitioner's removal), with Arbid v. Holder, 700 F.3d 379, 382 n.2 (9th Cir. 2012) (per curiam) (deciding that § 1252(a)(2)(C)'s jurisdictional limitation did not apply because, unlike here, the petitioner was not subject to removal proceedings under § 1182(a)(2)(A)(i)(I)).

subjected to violence if he is removed to Mexico. The IJ noted that Gutierrez-Vargas had not suffered past torture in Mexico or been harmed by anyone associated with Mexico's government; that he did not know if the inmates who threatened him in jail were Zetas; that there was no evidence anyone had attempted to carry out the threats against Gutierrez-Vargas and his family; and that the evidence showed that the Mexican government was attempting to address the problem of gang violence. We also note that Gutierrez-Vargas and his family had not been contacted by Miranda or anyone claiming to be associated with him since 2013 and that Gutierrez-Vargas did not establish any connection between his home state in Mexico and Miranda that would support his fear that Miranda could carry out threats there. The IJ also considered that Gutierrez-Vargas's family in Mexico had not been threatened or harmed, citing Bernal-Rendon v. Gonzalez, 419 F.3d 877, 881 (8th Cir. 2005) ("An alien's fear of persecution [upon return to her native country] is reduced when her family remains unharmed in her native country."). Gutierrez-Vargas argues that this last fact should not have been given any weight because the threats pertained to him and his immediate family in Illinois and he had not lived in Mexico for some time, so would not be closely associated with his family there. Even if we exclude from consideration the absence of threats and harm, Gutierrez-Vargas has not shown that no reasonable factfinder could find that there was insufficient evidence to conclude that it is more likely than not that he would be tortured if removed to Mexico.

We find to be without merit Gutierrez-Vargas's suggestion that because the IJ found his testimony to be credible, it was necessarily sufficient. Although an applicant's credible testimony "*may* be sufficient to sustain the burden of proof without corroboration," 8 C.F.R. § 1208.16(c)(2) (emphasis added), the IJ found that Gutierrez-Vargas's testimony, even taken as true, did not satisfy that burden. Gutierrez-Vargas has failed to demonstrate any abuse of discretion in that ruling.

The petition for review is denied.

_____