THOMAS, Circuit Judge,
dissenting:
I would join the five other circuits that have considered the issue. Unsworn, unauthenticated, hearsay letters — prepared for litigation by the government and not subject to any form of cross-examination— cannot form the sole basis for denying asylum to an otherwise qualified applicant. Therefore, I must respectfully dissent.
I
We have long criticized the practice of using anonymous hearsay as the basis for denying constitutional rights, without affording due process. As Judge Walter *1283 Pope wrote in 1955 in a ease involving security clearances:
The question is: Is this system of secret informers, whisperers and talebearers of such vital importance to the public welfare that it must be preserved at the cost of denying to the citizen even a modicum of the protection traditionally associated with due process?
Parker v. Lester, 227 F.2d 708, 719 (9th Cir.1955).
For Judge Pope, the answer was an unequivocal “no,” and that should be our answer today.
A
As we have steadfastly held, immigration proceedings must be conducted “in accord with due process standards of fundamental fairness.” Ramirez-Alejandre v. Ashcroft, 319 F.3d 365, 370 (9th Cir.2003) (en banc) (internal quotation marks omitted). For that reason, four of our sister circuits have held that the government violates the due process rights of aliens when it denies asylum solely on the basis of conclusory letters prepared for litigation in reliance on multiple layers of unauthenticated hearsay, without affording the petitioner some right of confronting the charges. Banat v. Holder, 557 F.3d 886, 892-93 (8th Cir.2009); Anim v. Mukasey, 535 F.3d 243, 256-258 (4th Cir.2008); Alexandrov v. Gonzales, 442 F.3d 395, 407 (6th Cir.2006); Ezeagwuna v. Ashcroft, 325 F.3d 396, 405-08 (3d Cir.2003). Those circuits have held that due process requires consular letters to meet the minimal standards of reliability and trustworthiness in order to be admissible.
To be sure, “overseas investigations by State Department officials concerning the authenticity of documents purportedly originating in foreign countries are often necessary for the adjudication of an asylum claim.” Banat, 557 F.3d at 890. However, as the 8th Circuit also explained:
Reliance on reports of investigations that do not provide sufficient information about how the investigation was conducted are fundamentally unfair because, without that information, it is nearly impossible for the immigration court to assess the report’s probative value and the asylum applicant is not allowed a meaningful opportunity to rebut the investigation’s allegations.
Id. at 891.
Additionally, without reaching the Constitutional question, the Second Circuit rejected a “highly unreliable” consular report on the grounds that it did not amount to substantial evidence to support a finding that the document was forged. Lin v. U.S. Dep’t of Justice, 459 F.3d 255, 268-272 (2d Cir.2006); see also Balachova v. Mukasey, 547 F.3d 374, 382-83 (2d Cir.2008) (applying Lin). Lin quoted with approval the Department of Justice’s own guidelines for preparation of such reports,[1] *1284 distilling them into three factors for evaluating the reliability of a consular letter: “(i) the identity and qualifications of the investigator(s); (ii) the objective and extent of the investigation; and (iii) the methods used to verify the information discovered.” Id. at 271.
Keeping in mind the Lin factors, an examination of the circumstances giving rise to the other circuits’ concerns is instructive in evaluating this case.
In Banat, the Eighth Circuit rejected the IJ’s reliance on a consular letter that cited to an unidentified embassy investigator, with no indication of the qualifications or experience of the investigator or the investigator’s “contact,” and that contained multiple levels of hearsay. 557 F.3d at 891-92. The Eighth Circuit applied the Lin factors and determined that none of the factors were met. Id. at 891-93. As a result, the Court concluded that “the IJ’s reliance on the State Department letter, which provided no details about the investigation that would allow the IJ to assess the investigation’s reliability or trustworthiness and which contained multiple levels of hearsay, violated Banat’s right to a fundamentally fair hearing.” Id. at 893.
In Balachova, the Second Circuit concluded that “the consular report is unreliable and cannot contribute to a finding of substantial evidence.” 547 F.3d at 383. The Court noted that the report “contains no information concerning the qualifications of the investigators, the identity of the Russian officials who prepared the response to the consular inquiry, or the methods, if any, used to verify the information supplied by the foreign official.” Id. Applying the Lin factors, it held that the IJ could not rely on the letter.
In Anim, the Fourth Circuit considered a State Department letter authored by the same official involved in our case. It concluded that “the Bunton letter contains insufficient indicia of reliability and, as a result, its use was fundamentally unfair.” 535 F.3d at 256. It noted that the letter “is comprised entirely of multiple hearsay statements.” Id. at 257. It also pointed out that the “letter does not explain how Bunton received the information she relates, nor does the letter disclose the identities of some of the individuals involved in the chain of communication.” Id. The Court observed that the letter provided “markedly insufficient information” as to how the investigation was conducted, and emphasized that “[wjithout the details of the investigation, it is impossible for an immigration judge, the BIA, or a court to evaluate the reliability of the letter’s conclusions.” Id. The Fourth Circuit determined that the letter did not satisfy the Lin test, concluding that the letter did not “meet even the minimum standards prescribed by [the Department of Homeland Security],” and lacked “the clarity and content necessary to provide fair or probative evidence in an immigration proceeding.” Id. at 258. The Fourth Circuit also warned of the temptation to defer to and rely on “the general prestige and competence of the Department of State” as the primary factor in determining the document’s authenticity, rather than on “adequate evaluation of the reliability of the document.” Id.
In Lin, the Second Circuit rejected a letter almost identical to the one at issue here. The report was based on the opinions of government officials who, as the Second Circuit noted, “appear to have powerful incentives to be less than candid *1285 on the subject of their government’s persecution of political dissidents.” Id. at 269-70. The Court concluded that the Consular Report was “insufficiently detailed to permit a reviewing court to assess its reliability.” Id. at 270.
In Alexandrov, the Sixth Circuit concluded that two consular memoranda did “not meet our standards of trustworthiness and reliability and were therefore improperly relied upon by the immigration court.” 442 F.3d at 407. The Court noted that there was no identification of the embassy investigator, no clarification “to any degree [of] what type of investigation was conducted,” no description of how the investigation was concluded, no explanation of the investigator’s qualifications, and no identification of the person who provided the information. Id. As the Court summarized, “[t]here is not much that we do know aside from the apparent conclusions of the mysterious investigation.” Id.
In Ezeagwuna, the Third Circuit held that the BIA violated the petitioner’s due process rights by basing its credibility finding on a consular letter, which the Court concluded was “neither reliable nor trustworthy.” 325 F.3d at 408. It found that the letter constituted “multiple hearsay of the most troubling kind.” Id. at 406. The Court also noted that the investigator was unidentified, country officials were identified only by position, the sources of information were not disclosed, the method of investigation was not detailed, and only conclusory statements were made. Id. at 406-08. It observed that it had “absolutely no information about what the ‘investigation’ consisted of, or how the investigation was conducted in this case.” Id. at 408. The Court was also concerned that the agency was “attempting to use the prestige of the State Department letterhead to make its case.” Id. at 407. It emphasized that “the Board’s decisions cannot be sustained simply by invoking the State Department’s authority,” noting that the procedural safeguard of judicial review “would be destroyed if the Board could justify its decisions simply by invoking assertions by the State Department that themselves provide no means for evaluating their validity.” Id. (quoting Li Wu Lin v. INS, 238 F.3d 239, 246 (3d Cir.2001)).
Our case cannot be distinguished from those decided by our sister circuits. In this case, the immigration judge relied on a short, unsworn letter from Cynthia Bun-ton, the State Department’s Director of the Office of Country Reports and Asylum Affairs (“the Bunton Letter”). The Bun-ton letter consisted of unauthenticated, hearsay statements from unidentified officials. There is no description of the methodology employed in the investigation, the qualifications of the investigators, or who was involved. In short, the Bunton Letter contains conclusory statements of fact, but no information, as required by the Lin factors, about “(i) the identity and qualifications of the investigator(s); (ii) the objective and extent of the investigation; and (iii) the methods used to verify the information discovered.” Lin, 459 F.3d at 271. We are left, as were our sister circuits, with a document that is “insufficiently detailed to permit a reviewing court to assess its reliability.” Id. at 270. Indeed, in many ways, there is less information in the Bunton letter than in letters rejected as unreliable by our sister circuits. Further, the key information provided in this case was by an unnamed individual at the police department where Angov claims to have been severely beaten on account of his political views. Like the government officials in Lin, the official — whose department had been accused of brutality by Angov — had a strong incentive to be “less than candid.” Id. at 269.
*1286 In sum, whether we cast the issue as one of due process or of substantial evidence, the Bunton letter falls far short of satisfying the standards of reliability established by our sister circuits and the agency should not have relied upon it.[2]
B
The Government argues that the Bunton Letter should be credited as trustworthy by employing the presumption of regularity — that is, that government officials accurately perform their reporting duties without bias. See Espinoza v. INS, 45 F.3d 308, 310 (9th Cir.1995) (holding that “information on an authenticated immigration form is presumed to be reliable in the absence of evidence to the contrary presented by the alien”).
However, the presumption of reliability does not apply when the source of information “was neither a government official nor the subject of the report.” Hernandez-Guadarrama v. Ashcroft, 394 F.3d 674, 681 n. 9 (9th Cir.2005) (citing Espinoza, 45 F.3d at 310). The key hearsay statement in the Bunton Letter comes from a Bulgarian police employee, not a U.S. government official or Angov. Statements made by third persons under no business duty to report are not entitled to the presumption of reliability and cannot be considered subject to the presumption, even if included in a document that enjoys such a presumption. United States v. Pazsint, 703 F.2d 420, 424-25 (9th Cir.1983); see also Pouhova v. Holder, 726 F.3d 1007, 1014-15 (7th Cir.2013) (rejecting application of presumption of reliability to hearsay statements of third parties recorded in official documents); Jordan v. Binns, 712 F.3d 1123, 1133 (7th Cir.2013) (“[T]he presumption of reliability that serves as the premise for the public-records exception does not attach to third parties who themselves have no public duty to report.”).
Second, the presumption of reliability, similar to the traditional hearsay exception for public records, applies to documents “prepared in accordance with normal recordkeeping requirements.” Espinoza, 45 F.3d at 310; see also Lopez-Chavez v. INS, 259 F.3d 1176, 1181 (9th Cir.2001) (“It must be shown that the document has been certified by the INS District Director as a true an[d] accurate reflection of INS records.”). The Bunton Letter, summarizing the results of an investigation involving multiple individuals and carried out at the behest of a party involved in litigation, is not comparable to an authenticated immigration form routinely filled out by border agents. Espinoza, 45 F.3d at 309. It is not a “business record” which is prepared in the usual and ordinary course of business. It was not authenticated or certified. It did not even conform with the agency’s own reporting procedures, as described and set forth in the Cooper Memo. Thus, the ad hoc Bunton Letter does not qualify as a government document produced in accordance with regular agency procedure.
For these reasons, I find the government’s arguments unpersuasive.
II
Adjudicating asylum claims is necessarily an imperfect endeavor. Witnesses to alleged foreign persecution are rarely available; documents are often impossible to locate. The immigration judge is often left with assessing witness credibility as *1287 the only means of resolving the request for relief. We are often limited to seeing through a glass, darkly.
As to post-REAL ID Act asylum seekers, the IJ may require corroboration, even when presented with credible testimony. See Aden v. Holder, 589 F.3d 1040, 1044 (9th Cir.2009) (‘Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence.” (quoting 8 U.S.C. § 1158(b)(1)(B)(ii))). We have sustained the BIA’s denial of relief founded on the inability of an asylum seeker to obtain corroboration. Shrestha v. Holder, 590 F.3d 1034, 1047-48 (9th Cir.2010).
In the post-REAL ID Act world, when corroborating evidence has assumed more importance, it is not unfair or unduly burdensome to require the government to identify basic, rudimentary information about its sources when it challenges corroborating evidence so that the IJ can properly weigh it. The information our sister circuits have demanded is modest. They do not require that every detail be uncovered or every riddle solved, they merely ask that very basic foundational questions — already in the hands of the Executive Branch — be answered. The Executive Branch invests significant resources in forensic document analysts, who provide detailed declarations in immigration cases. It is not much to ask that in the case of routine foreign fact-checking, the government simply tell us how it acquired the facts upon which it asks us to deny asylum.
The alternative is a decision founded solely on anonymous hearsay, often — as in this case — produced by the very foreign government actors the asylum-seeker accuses of persecution. Nearly sixty years ago, Judge Pope underscored the danger of relying on “secret informers, whisperers and talebearers” to decide legal rights in the administrative process. We should not succumb to that temptation again, especially when it is used as the sole basis to deny relief to an otherwise qualified applicant. The immigration system is fraught with enough risk of error. When it is reasonably possible, we need to minimize that risk.
I respectfully dissent.

. If I were writing on a clean slate, I would join the Second Circuit and adopt the Lin factors as probative of the substantial evidence question, without reaching the due process issue. If forced to decide the contours of due process in this context, I would join our four other sister circuits and hold that administrative reliance on hearsay letters lacking sufficient authentication, such as the Bunton letter, violates due process.