# United States Court of Appeals

### For the Eighth Circuit

_____

No. 20-2355
_____

Karla Monika Gilbertson

*Petitioner*

v.

Merrick B. Garland, Attorney General of the United States; Alejandro Mayorkas, U.S. Department of Homeland Security

*Respondent*s
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: May 13, 2021
Filed: August 2, 2021
_____

Before SMITH, Chief Judge, SHEPHERD and GRASZ, Circuit Judges.
_____

GRASZ, Circuit Judge.

Karla Monika Gilbertson, a native and citizen of Mexico, appeals a Board of Immigration Appeals order denying her removal relief. For the following reasons, we deny the petition.

## I. Background

In 1992, at age thirteen, Gilbertson illegally entered the United States. Since then, she has mainly lived in Minnesota. In 2016, she became a lawful permanent resident via the Violence Against Women Act.

In 2011, Gilbertson began an eight-year relationship with "El Chino," a drug dealer who introduced her to methamphetamine and heroin. Soon, she became involved in El Chino's drug deals.

Around that time, Gilbertson also met "Archie"—another drug dealer—who, according to Gilbertson, belonged to Los Zetas, a Mexican drug cartel which traffics drugs between Mexico and the northern United States. Archie gave Gilbertson money and meth for her personal use. Gilbertson learned about the tunnels that Los Zetas used to smuggle drugs into the United States. In time, she also got involved in Archie's drug deals by acting as an intermediary between Archie and El Chino.

In 2017, a drug deal went bad. As Gilbertson tells it, El Chino gave her a car to transport a $50,000 load of meth. Unbeknownst to her, the vehicle was stolen. Later, police stopped the car, arrested the drivers, and seized the meth. Soon after, two males attacked Gilbertson in her home. And at least ten times after that, drug users broke into her house to try to steal her drug stash. Archie also made threatening phone calls to Gilbertson and sent her videos of masked Los Zetas members carrying out executions.

In 2018, police searched Gilbertson's house and discovered drugs and weapons. After Gilbertson was charged with various state crimes, she pled guilty to selling controlled substances, *see* Minn. Stat. § 152.023, subd.1(1), a felony in Minnesota. She was sentenced to 21 months of imprisonment. Gilbertson concedes that this offense constitutes an aggravated felony making her statutorily ineligible to seek asylum.

The Department of Homeland Security ("DHS") then commenced removal proceedings.  At her removal hearing, Gilbertson testified about her mental health history—which includes diagnoses of bipolar disorder, depression, anxiety, borderline multiple personality disorder, impulse control problems, and repeated attempts to end her own life.

Because Gilbertson conceded her state drug offense constituted an aggravated felony, the Immigration Judge ("IJ") concluded that Gilbertson had been convicted of a *per se* "particularly serious crime" ("PSC"), was ineligible to seek asylum, and was barred from withholding of removal.   *See* 8 U.S.C. § 1158(b)(2)(A)(ii), (B)(i); 8 U.S.C. § 1231(b)(3)(B)(ii).  The IJ also concluded that Gilbertson did not meet her burden of proof to establish eligibility for deferral of removal under the Convention Against Torture ("CAT").  The BIA adopted and affirmed the IJ's decision, and Gilbertson, seeking to remain in the United States, now petitions us for review.

## II.  Analysis

"When the BIA adopts and affirms an IJ's decision, . . . [we review] both decisions together."  *Bhosale v. Mukasey*, 549 F.3d 732, 735 (8th Cir. 2008).  "We review constitutional claims and questions of law *de novo*."  *Lasu v. Barr*, 970 F.3d 960, 964 (8th Cir. 2020).  "We review factual determinations under the substantial evidence standard, reversing only if 'the evidence is so compelling that no reasonable factfinder could fail to find in favor of the petitioner.'"  *Zheng v. Holder*, 698 F.3d 710, 713 (8th Cir. 2012) (quoting *Bernal-Rendon v. Gonzales*, 419 F.3d 877, 880 (8th Cir. 2005)).

When the petitioner is a criminal alien under 8 U.S.C. § 1252(a)(2)(C), our jurisdiction to review final orders of removal "is limited to constitutional claims and questions of law."  *Sharif v. Barr*, 965 F.3d 612, 618 (8th Cir. 2020) (quoting *Hanan v. Mukasey*, 519 F.3d 760, 763 (8th Cir. 2008)); *see* 8 U.S.C. § 1252(a)(2)(D).  But, "[o]ur jurisdiction to review [Gilbertson's] arguments pertaining to [her] CAT claim is broader[.]"  *Sharif*, 965 F.3d at 621 (citing *Nasrallah v. Barr*, 140 S. Ct. 1683,

1694 (2020) ("A CAT order is distinct from a final order of removal. . . . Therefore, [the criminal alien review bar does] not preclude judicial review of a noncitizen's factual challenges to a CAT order.")).

Gilbertson raises two main arguments on appeal. First, that the BIA erred in excluding her mental health issues from the PSC analysis. Second, that there is not substantial support for the IJ's determination, affirmed by the BIA, that she is not likely to be tortured with the consent or acquiescence of the Mexican government if she returns to Mexico. We address each argument in turn.

## A. Mental Health

Gilbertson argues that the BIA erred in excluding her mental health issues from the PSC analysis. Specifically, she argues that the BIA erred in relying on *Matter of G-G-S-* because that case has been subsequently overruled. *Matter of G-G-S-*, I. & N. Dec. 339, 345 (BIA 2014) (holding that an alien's mental health is *not* a factor to be considered in a PSC analysis).

After the BIA's decision in Gilbertson's case, we held in *Shazi v. Wilkinson* that *Matter of G-G-S-* represented an "arbitrary and capricious construction of 8 U.S.C. § 1231 [statutory withholding of removal], and we reject[ed] such a categorical evidentiary bar in the particularly serious crime analysis." *Shazi v. Wilkinson*, 988 F.3d 441, 450 (8th Cir. 2021). Gilbertson now claims that the BIA relied squarely on *Matter of G-G-S-* and that remand is required in light of *Shazi*. We disagree.

Here, the IJ's decision to not consider mental health in the PSC analysis—which the BIA adopted and affirmed—relied exclusively on *In re Y-L-*, 23 I. & N. Dec. 270, 274 (A.G. 2002), rather than *Matter of G-G-S-*. In *In re Y-L-* the Attorney General stated that "aggravated felonies involving unlawful trafficking in controlled substances presumptively constitute 'particularly serious crimes[.]'" *In re Y-L-*, 23 I. & N. Dec. at 274. The Attorney General also added "[o]nly under the most

-4-

extenuating circumstances that are both *extraordinary and compelling* would departure from this interpretation be warranted or permissible." *Id.* (emphasis added). The Attorney General established the *In re Y-L-* framework specifically for drug trafficking convictions given the offenses' dangerous nature and severity. *Id.* at 275. That framework applies in removal cases involving aggravated felonies related to drug trafficking—like Gilbertson's. So, we therefore conclude that the IJ properly applied and relied on *In re Y-L-* to reject Gilbertson's arguments.[1]

By applying the *In re Y-L-* framework to the present case—involving the trafficking of controlled substances—the IJ properly held that Gilbertson had been convicted of a PSC and thus could not receive withholding of removal. Under *In re Y-L-*, we apply a strong presumption that an aggravated-felony conviction that relates to drug trafficking will constitute a PSC. *Id.* To overcome that presumption for her conviction, Gilbertson needed to show, *at a minimum*, that the offense involved only: (1) a very small quantity of controlled substance; (2) a very modest amount of money paid for the drugs; (3) her peripheral involvement in the criminal activity, transaction, or conspiracy; (4) no implied or actual violence; (5) no connection to organized crime or a terrorist organization; and (6) no harmful effect on juveniles. *Id.* at 276–77. She did not do so here. Gilbertson possessed more than

---

[1]*Shazi* concerned the BIA's *general* PSC analysis, under which the BIA has a policy of considering "all reliable information" including "information outside of the confines of a record of conviction." 988 F.3d at 449 (emphasis omitted) (citation omitted). Accordingly, we found that such a categorical bar to mental health evidence was an arbitrary and capricious construction of 8 U.S.C. § 1231. *Id.* at 450. Gilbertson's conviction is not subject to this general framework. Instead, the Attorney General, in its discretion under 8 U.S.C. § 1231(b)(3)(B), determined that "aggravated felonies involving unlawful trafficking in controlled substances presumptively constitute 'particularly serious crimes'" and established a separate framework, not at issue in *Shazi*, by which a petitioner could overcome the presumption. *See In re Y-L-*, 23 I. & N. Dec. at 274, 276–77. Gilbertson challenges neither the Attorney General's decision in *In re Y-L-* nor the Attorney General's authority to designate a certain conviction as a PSC. Because the framework in *In re Y-L-* does not contemplate the consideration of "all reliable evidence," the application of *Shazi* to the present case is misplaced.

50 grams of methamphetamine, had illegal weapons, and was involved with Los Zetas' drug deals.[2]

Because Gilbertson failed to rebut the *In re Y-L-* presumption, the IJ did not err in not considering mental health as a factor in the PSC analysis.

## B. Convention Against Torture

Gilbertson next challenges the IJ's finding, affirmed by the BIA, that she is not entitled to CAT relief. As an applicant for deferral of removal, Gilbertson's CAT eligibility would require her to show "it is more likely than not," 8 C.F.R. § 1208.16(c)(2), that she would be tortured if removed to Mexico "by, or at the instigation of, or with the consent or acquiescence of, a public official . . . or other person acting in an official capacity[.]" *Id.* § 1208.18(a)(1).

The IJ found that while cartel violence continues in Mexico, that alone cannot show a more-likely-than-not chance that the Mexican government would acquiesce in Gilbertson's torture. We agree. "A government does not acquiesce in the torture of its citizens merely because it is aware of torture but powerless to stop it[.]" *Hassan v. Rosen*, 985 F.3d 587, 590 (8th Cir. 2021) (quoting *Ramirez-Peyro v. Holder*, 574 F.3d 893, 899 (8th Cir. 2009)). In fact, some country-condition reports

---

[2]The BIA adopted and affirmed the IJ's decision, which relied exclusively on the *In re Y-L-* framework. To the extent that the BIA relied on *Matter of G-G-S-*, such reliance was harmless error. "Harmless errors no more justify reversal in a deportation case than in a criminal case." *See Maashio v. I.N.S.*, 45 F.3d 1235, 1240 (8th Cir. 1995) (quoting *Ortiz-Salas v. I.N.S.*, 992 F.2d 105, 106 (7th Cir. 1993)); *see also Campos Julio v. Barr*, 953 F.3d 550, 552 (8th Cir. 2020) ("Harmless error determinations are a universally recognized aspect of appellate review."). Therefore, because *In re Y-L-* is the correct legal standard, and it alone defeats Gilbertson's argument, any error that the BIA made in relying on *Matter of G-G-S-* did not affect the outcome of the present case. *See Reyes-Morales v. Gonzales*, 435 F.3d 937, 943 (8th Cir. 2006) (concluding that a BIA error was purely ministerial and therefore harmless).

show that the Mexican government is actively combating drug cartels and taking steps to counter the torture and ill-treatment of its citizens.

The IJ's fact-findings "must be upheld unless the alien demonstrates that the evidence [s]he presented not only supports a contrary conclusion but *compels* it." *Ngugi v. Lynch*, 826 F.3d 1132, 1136 (8th Cir. 2016). Gilbertson's evidence falls short of that standard. The IJ determined that Archie's threats toward Gilbertson were not sufficient to support her claims:

> (1) that Los Zetas is aware of her perceived cooperation with U.S. law enforcement; (2) that Los Zetas is interested enough in punishing [Gilbertson] that they will seek her out anywhere in Mexico and kill her (despite her actual, low-level involvement); [and] (3) that Los Zetas would be able to rely on its government informants and alliances to know when [Gilbertson] returns to Mexico, find [her] anywhere in Mexico, and detain her.

Gilbertson's CAT application rests on a "hypothetical chain of events"; thus, she needed to show that it was more likely than not that each link in the chain would occur. *See Matter of J-F-F-*, 23 I. & N. Dec. 912, 917 (A.G. 2006); *see Lasu*, 970 F.3d at 967. But here, there is nothing in the record to rebut the IJ's findings.

Because the record does not compel the conclusion that the Mexican government would, more likely than not, acquiesce in Gilbertson's torture, we affirm the denial of CAT relief to Gilbertson.[3]

---

[3]Gilbertson also argues that the IJ and the BIA erred in determining that she would need to specifically prove that "a person perceived to have snitched on cartels [is] specifically targeted for torture" because they should have taken judicial notice of the commonly known fact that Mexican cartels hunt down and torture those who cross them. We disagree. The Code of Federal Regulations gives the BIA the discretion to choose when *and when not* to take administrative notice of a given fact. *See* 8 C.F.R. § 1003.1(d)(3)(iv)(A)(1)–(2) ("The Board *may* take administrative notice of commonly known facts such as current events or the contents of official documents." (emphasis added)). The BIA acted within its discretion when it

## III. Conclusion

For the foregoing reasons, we deny the petition for review.

_____

---

decided against administratively noticing Gilbertson's fact.  That decision was not erroneous.